385 So.2d 672 (1980)
STATE of Florida, Appellant,
v.
Scott M. SPURLING, Appellee.
No. 79-1820.
District Court of Appeal of Florida, Second District.
June 6, 1980.
Rehearing Denied July 11, 1980.
*673 Jim Smith, Atty. Gen., Tallahassee, and Michael J. Kotler, Asst. Atty. Gen., Tampa, for appellant.
Robert E. Jagger, Public Defender, Clearwater, and Jack D. Hoogewind, Asst. Public Defender, Dade City, for appellee.
CAMPBELL, Judge.
The state appeals the trial court's order granting defendant's motion to suppress tangible evidence. The trial court agreed with defendant's contention that because the initial stop was improper, his subsequent arrest was tainted and could not justify a search incident thereto. We find that there was sufficient basis for the deputy sheriff to stop appellant and, therefore, reverse.
The facts are undisputed, the only testimony at the hearing on the motion to suppress being that of the arresting officer, Deputy Joe Moore of the Pasco County Sheriff's Office. The sheriff's office had received numerous complaints from the management of the Stardust Bowling Lanes regarding juveniles and adults loitering in their parking lot while consuming alcoholic beverages or using drugs. The management requested the sheriff's office to increase their patrol of the grounds around the bowling lanes for the purpose of preventing such loitering. Deputy Moore had received such a complaint from the management on the night before the incident involved here.
On the night in question at approximately 10:20 p.m., Deputy Moore was on a routine patrol around the Stardust Bowling Lanes. He was alone, in uniform and driving a marked sheriff's automobile. After first driving around the parking lot on the west side of the building, the deputy continued his patrol by driving to the parking lot on the east side of the building, where he observed the defendant urinating on the side of a truck. Defendant was standing on the driver's side and another male was standing on the passenger's side of the truck. The deputy did not know at that time that the truck belonged to the defendant. While the defendant finished urinating, the deputy got out of his vehicle and requested the passenger to step over to his patrol car in order to question him for the purpose of filling out a field interrogation report (FIR).[1]
*674 After completing the report in regard to the passenger, the defendant approached the patrol car, and the deputy proceeded to obtain from him information to complete the report. At that point the deputy observed that the defendant was unstable on his feet, his speech was slurred and he smelled of alcohol. He also recognized the defendant as a person on whom he had completed an FIR approximately two weeks previously. He recalled having encountered no problems with him at that time. On that previous occasion, the defendant was not in or around his truck.
After completing most of the FIR on defendant, the deputy attempted to obtain the truck's identification number, not knowing whether or not it had been stolen. He walked to the passenger side and shined his flashlight inside, at which point defendant shouted, "Get the hell away from my truck!" This remark was loud enough to be heard in the parking lot. The deputy ignored the remark, however, and went to the other side of the truck, still attempting to obtain an identification number. He was unsuccessful and returned to the passenger side, where he was again greeted by defendant's shouting at him in profane, abusive and derogatory language. This was loud enough to capture the attention of a group of people entering the bowling lanes. As the deputy turned to confront him, defendant placed his hand on the deputy's shoulder. At that point the defendant was arrested for disorderly intoxication. When the deputy conducted a pat down search before placing defendant in the patrol car, he discovered approximately seventy-one grams of suspected marijuana in the crotch of defendant's pants.
The sole question at the hearing on the motion to suppress the marijuana was whether the deputy was justified in stopping and questioning the defendant under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and Florida's "Stop and Frisk Law", Section 901.151, Florida Statutes (1977). The trial court was of the opinion that this court's decision in Vollmer v. State, 337 So.2d 1024 (Fla. 2d DCA 1976),[2] rather than our decision in Boal v. State, 368 So.2d 71 (Fla. 2d DCA 1979), was more analogous factually, and that, therefore, there was not sufficient basis for the stop.
We fully recognize and adhere to the well-settled proposition that a trial court's ruling on a motion to suppress comes to this court with a presumption of correctness and must be accepted by this court if the record reveals evidence to support the findings. See e.g., State v. Battlemen, 374 So.2d 636 (Fla. 3d DCA 1979). We must conclude here, however, that the unrefuted evidence offered by Deputy Moore does not support the trial court's finding.
We are not concerned here with "probable cause" to make an arrest, but with whether the facts and circumstances apparent to the deputy created a "founded" or "reasonable suspicion" that something was amiss requiring his further investigation. A temporary detention is permissible if the facts available to the deputy at the time would warrant a person of reasonable caution in believing that the action taken was appropriate. Franklin v. State, 374 So.2d 1151 (Fla. 3d DCA 1979); Lewis v. State, 337 So.2d 1031 (Fla. 2d DCA 1976); Stanley v. State, 327 So.2d 243 (Fla. 2d DCA 1976). A "founded suspicion" is that which has some factual foundation in the circumstances observed by the officer, when those circumstances are interpreted in the light of the officer's knowledge. In those cases where reasonable persons might differ as to whether the circumstances observed by the officer gave him an objective foundation for his suspicion, certain factors may *675 be applied to determine whether the circumstances reasonably suggested the suspect's possible commission, existing or imminent, of an offense. Those factors include the time, the location, the physical appearance and behavior of the suspect and anything incongruous or unusual in the situation as interpreted in light of the officer's knowledge. State v. Stevens, 354 So.2d 1244 (Fla. 4th DCA 1978).
Those tests support Deputy Moore's actions here. Though he had no knowledge that either the defendant or the passenger had violated any laws at the time he initially observed them, he testified that he approached them "[b]ecause they were loitering out there in the parking lot." Both the Pasco County Sheriff's Office and, as late as the night before, Deputy Moore himself, had received complaints and requests for assistance from the management of the bowling lanes because of problems arising from people who were involved with drugs and alcohol and loitering in the parking lot. With that knowledge, his observation of the defendant outside the bowling lanes at 10:20 p.m. urinating against the side of a truck was behavior incongruous or unusual enough to warrant his further investigation. Surely a law enforcement officer under those circumstances is not required to ignore the incident and proceed on, doing nothing.
Section 901.151(2) provides that:
Whenever any law enforcement officer of this state encounters any person under circumstances which reasonably indicate that such person has committed, is committing, or is about to commit a violation of the criminal laws of this state or the criminal ordinances of any municipality or county, he may temporarily detain such person for the purpose of ascertaining the identity of the person temporarily detained and the circumstances surrounding his presence abroad which led the officer to believe that he had committed, was committing, or was about to commit a criminal offense.
Section 856.021, Florida Statutes (1977), makes it an offense for any person to "loiter or prowl in a place, at a time or in a manner not usual for law-abiding individuals, under circumstances that warrant a justifiable and reasonable alarm or immediate concern for the safety of persons or property in the vicinity." When Deputy Moore first observed the defendant urinating against the side of a truck in the parking lot of the bowling alley late at night, he did not know whose truck it was or whether it might have been stolen or about to be stolen. He did not know whether the defendant's urinating in a public parking lot indicated that the defendant was under the influence of alcohol or drugs and about to drive off in the truck while under such influence. Section 856.021 further provides that when a law enforcement officer observes a person loitering or prowling as defined, he shall, "prior to any arrest . . afford the person an opportunity to dispel any alarm or immediate concern which would otherwise be warranted by requesting him to identify himself and explain his presence and conduct." It was while doing exactly that that Deputy Moore observed the odor of alcohol on defendant, his slurred speech and unstableness on his feet. At this point the actions of the defendant and his loud and abusive comments to Deputy Moore precipitated the arrest for disorderly intoxication.
Rather than the motive of the arresting officer, what must be examined is the conduct of the defendant that gave rise to his ultimate arrest and search. State v. Nittolo, 317 So.2d 748 (Fla. 1975); State v. Holmes, 256 So.2d 32 (Fla. 2d DCA 1971). If Deputy Moore's suspicions were aroused because the defendant was loitering as defined by the statute, he was obligated to further investigate. Before he could arrest defendant for loitering he would have had to satisfy himself as to whether or not the defendant's suspected loitering or prowling was done under conditions which threatened a breach of the peace or the public safety of persons or property. In State v. Ecker, 311 So.2d 104, 110 (Fla. 1975), the supreme court held:

*676 The whole purpose of the statute is to provide law enforcement with a suitable tool to prevent crime and allow a specific means to eliminate a situation which a reasonable man would believe could cause a breach of the peace or a criminal threat to persons or property.
It was while attempting to satisfy this requirement that defendant's conduct and physical appearance and condition precipitated his arrest, not for loitering but for disorderly intoxication.
The supreme court in State v. Nittolo, supra, adopted the dissenting opinion in the district court decision being reviewed. What was said there applies to the facts here, for here as there, "The police officer was where he should have been, doing what he was trained to do; and the mere fact that the defendants panicked" and engaged in conduct that precipitated the arrest and subsequent search "ought not give rise to an after-the-fact contention that the officer" had unreasonably detained the defendant for his initial investigation. 317 So.2d at 750. As was further said there:
"It seems to me to suppress the evidence under the instant circumstances requires us to strain our Constitution `through a filament of unrealistic exactitude'. See Mattier v. State, Fourth District Court of Appeal, 301 So.2d 105. What the state and federal Constitutions forbid is not all searches and seizures but only unreasonable searches and seizures; the Constitution does not forbid the application of common sense in the detection of crime and the apprehension of criminals. State v. Holmes, supra. As I indicated in Mattier v. State, supra, `there is no war between the Constitution and common sense.'"
Id.
As we held in State v. Brooks, 281 So.2d 55 (Fla. 2d DCA 1973), regarding a frisk under the stop and frisk law, it is apparent that no hard and fast rule can be adopted which will in every instance guide the police as to when they may or may not stop or detain an individual for further investigation. For the trial court to apply Vollmer v. State, supra, in this case was a too stringent limitation on the responsibilities and obligations of Deputy Moore when he observed the actions of the defendant in light of the previous knowledge he possessed while patrolling the area where the incident took place.
We, therefore, reverse and remand for treatment consistent with this opinion.
GRIMES, C.J., and SCHEB, J., concur.
NOTES
[1] That report consists of the name, address, residence, date of birth, physical description, location of incident, social security number, driver's license number, vehicle description and identification number as they pertain to the individual questioned.
[2] In that case, appellant was stopped merely because he was walking along a main thoroughfare at 3:00 a.m. and had turned to watch the police cruiser pass by. There had been no reports of any criminal activity in the area on that morning. Concluding that the stop was unjustified, we reversed appellant's convictions for resisting arrest and possession of controlled substances.