406 So.2d 117 (1981)
Levie CODIE, Appellant,
v.
STATE of Florida, Appellee.
No. 81-330.
District Court of Appeal of Florida, Second District.
November 25, 1981.
*118 Peter D. Ringsmuth of Smith, Carta & Ringsmuth, Fort Myers, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and David T. Weisbrod, Asst. Atty. Gen., Tampa, for appellee.
SCHEB, Chief Judge.
Appellant, Levie Codie, raises several points in challenging his conviction for carrying a concealed weapon, but only one merits discussion. He contends that the trial court erred in refusing to suppress certain evidence seized by an officer who detained him for the purpose of obtaining his identification. Since we conclude the trial court correctly determined the officer had a well-founded suspicion to detain appellant, we affirm its denial of his motion to suppress.
The facts in this case as revealed at the hearing on the motion to suppress are undisputed. Deputy Charles Clifton of the Lee County Sheriff's Department was on road patrol in North Fort Myers on May 23, 1980. At approximately 12:15 a.m. he observed a Camaro and a Cadillac stopped in the side parking lot of a gas station which was closed. The Camaro was parked facing U.S. Highway 41 and the Cadillac was parked nearby facing in the opposite direction so that the drivers' doors were adjacent to each other. The parking lot was not enclosed and the cars were some twenty to thirty feet from U.S. 41 and twelve feet from a public road that runs perpendicular to U.S. 41. As Deputy Clifton drove in behind the Camaro, he observed two people, one in each car.
Deputy Clifton left his car and approached the Camaro on the passenger side. At this point, the Cadillac backed out and drove away. The deputy walked up to the open passenger window of the Camaro and asked the occupant, appellant, for identification. Clifton stated that he was standing behind the passenger door of the vehicle for safety reasons. It was at this point that he detained appellant for the purpose of determining his identity. The deputy then walked around the back of the Camaro to the driver's side and asked appellant for his driver's license. While appellant retrieved his license, the deputy shined his flashlight into the car and observed a canvas gun case on the floor. He then asked appellant to step out of the car and frisked him for weapons. Upon finding no weapon, the deputy asked appellant where his gun was. Appellant responded, "What gun?" or "What?" Without asking appellant's permission, the officer reached into the vehicle for the pistol case and saw a pistol stuck between the seat and the console of the Camaro. The wooden grips and about two inches of the pistol were visible. The officer testified that he recognized the pistol for what it was. He stated that prior to that time he was unable to see the pistol, because appellant's body and the seating arrangement of the vehicle blocked his view.
*119 Deputy Clifton testified that while crimes had been committed in the area recently, he had received no reports of criminal activity on that particular night. He said that because he was personally acquainted with the owner of the filling station, he knew that neither of the vehicles belonged to him.
Only Deputy Clifton testified and, after hearing his testimony and arguments of counsel, the court denied appellant's motion to suppress. A jury subsequently found Codie guilty of carrying a concealed firearm. The trial judge placed him on probation for five years with a condition that he serve fifteen days in jail. He also ordered him to pay a $2,000 fine. This appeal ensued.
Our "stop and frisk" law, Florida Statute 901.151(2) (1979), provides:
Whenever any law enforcement officer of this state encounters any person under circumstances which reasonably indicate that such a person has committed, is committing, or is about to commit a violation of the criminal laws of this state or the criminal ordinances of any municipality or county, he may temporarily detain such person for the purpose of ascertaining the identity of the person temporarily detained and the circumstances surrounding his presence abroad which led the officer to believe that he had committed, was committing, or was about to commit a criminal offense.
The law applies to vehicle stops and the court has held that to stop and briefly detain a vehicle, an officer must have a "well-founded suspicion" that its occupants might be involved in illegal activity. State v. Payton, 344 So.2d 648 (Fla.2d DCA 1977). The officer's suspicion must be based on observed facts interpreted in light of the officer's knowledge and experience. State v. W.O.R., 382 So.2d 763 (Fla.2d DCA 1980). Thus, the legality of each stop is dependent upon the facts within the detaining officer's knowledge. This standard does not require that there be a high probability of guilt; however, a mere suspicion is not enough. State v. Spurling, 385 So.2d 672 (Fla.2d DCA 1980). Reasonable men can differ as to whether the circumstances witnessed by an officer give a foundation to his suspicion. Then certain factors such as the time, location, physical appearance of the suspect, his behavior, the appearance and manner of operation of any vehicle involved, or anything incongruous or unusual in the situation can be evaluated to determine whether they suggest possible illegal activity. State v. Stevens, 354 So.2d 1244 (Fla. 4th DCA 1978).
We applied this test in State v. Spurling. There we found that an officer's initial stop was lawful and reversed the trial court's order of suppression. In Spurling the arresting officer was on a routine patrol at a bowling alley when he observed the defendant urinating on the side of a truck. The officer was patrolling the bowling alley as a result of complaints from the management that persons had been loitering in their parking lot and consuming alcoholic beverages or using drugs. The officer approached the defendant and asked him for information in order to fill out a field interrogation report. While talking with the defendant, the officer noted that he was unstable, that his speech was slurred and that he smelled of alcohol. When the officer attempted to obtain the truck's identification number, the defendant began shouting at him in profane language, and the officer arrested him for disorderly intoxication. A pat-down search revealed a quantity of marijuana in the defendant's pants. This court concluded that the circumstances observed by the officer justified his initial detention of the defendant for the purpose of obtaining identification.
In the present case Deputy Clifton did not witness any actual illegal activity prior to detaining appellant. However, application of the factors enumerated in State v. Stevens reveals that the deputy did have a well-founded suspicion to approach appellant and detain him for the purpose of ascertaining his identity. The officer spotted appellant's car shortly after midnight parked in a dimly lit area in the side parking lot of a gas station. Appellant appeared to be conversing with the driver of *120 another car which departed upon approach of the officer. The deputy was aware that there had been numerous reports of recent criminal activity in the area, and he knew that neither of the vehicles belonged to the station owner. As the supreme court noted in State v. Ecker, 311 So.2d 104, 110 (Fla. 1975):
The whole purpose of the [stop and frisk] statute is to provide law enforcement with a suitable tool to prevent crime and allow a specific means to eliminate a situation which a reasonable man would believe could cause a breach of the peace or a criminal threat to persons or property.
In the present case the deputy witnessed no actual illegal activity prior to detaining appellant as did the officer in Spurling. On the other hand, the instant case is somewhat more compelling. Here, Deputy Clifton approached appellant who was parked in a dark area on private property after business hours; while, in Spurling, the officer detained a person in a parking lot available to patrons during regular business hours.
While reasonable men could reach different conclusions concerning whether the officer had a founded suspicion to approach appellant and detain him for the purpose of ascertaining his identity, the trial court found the facts and rational inferences from those facts justified the officer's investigatory detention. Given the presumption of correctness with which the trial court's ruling on a motion to suppress comes to this court, and viewing the evidence and the inferences capable of being drawn therefrom in the light most favorable to the state, we agree that Deputy Clifton had a well-founded suspicion to detain appellant.
We have examined and find no merit to the appellant's other contentions. Accordingly, we affirm appellant's conviction.
SCHOONOVER, J., concurs.
GRIMES, J., dissents with opinion.
GRIMES, Judge, dissenting.
I cannot see how the presence of two automobiles parked in such a manner that the drivers merely appear to be talking to each other in the side parking lot of a closed filling station adjacent to a public highway at midnight is enough to give a passing deputy a well-founded suspicion of criminal activity. See McClure v. State, 358 So.2d 1187 (Fla.2d DCA 1978); Lower v. State, 348 So.2d 410 (Fla.2d DCA 1977).