PER CURIAM.
The State of Florida appeals the circuit court’s order granting Rogers’ motion to suppress two statements made while he was in custody. We affirm.
Rogers was arrested without a warrant. At the time of the arrest, the sheriff’s department knew the identity of the victim, the cause of her death, the description of the victim’s car, that Rogers had been seen driving a similar car and had been dating the victim, and that he tried to evade the deputy sheriff who arrested him.
After his arrest, Rogers first was taken to the place where the victim’s body had been found. He then was taken into an office at the jail where, after signing a waiver of rights form, he made an incriminating statement. Later, on the evening of the arrest, he was asked if he was ready to make a statement. He said that he would not be ready until he got some legal advice on a matter that was of concern to him. Lt. Jesse Cobb of the sheriff’s department called a public defender, awakening him. The attorney testified as follows:
A. And the voice on the other end says, “This is Jesse Cobb. We’re trying to finish up an investigation. The defendant wants to speak to you, and here he is”. And, quite frankly, I didn’t know whether it was a prank phone call or — or, really, had my wits about me, but I did talk to a gentleman. He told me he was being interrogated and should he tell anybody anything, and I told him that — I believe that I asked him, you know, did I represent him as one of the clients, and I think I concluded that I had never talked to him and I wasn’t appointed to represent him. And, then, he asked should he make any statements or anything. I said, “Well, all I can tell you is that generally speaking you just keep your mouth shut.” I think he wanted to carry on the conversation or — and I just told him to keep his mouth shut.
Q. Uh-huh.
A. And he hung up and, frankly, I just barely remembered having the phone call.
The next morning Rogers was questioned again after signing another waiver, and he made an incriminating recorded statement. Rogers moved to suppress both statements, and the trial court granted the motion based on there having been no probable cause to arrest and “no sufficient attenuating circumstances to break the connection between the arrest and the statement given on the following day.” We agree with the trial court that there was no probable cause for the arrest. Even if all of the information provided to the sheriff’s department were shown to be reliable, it could not have justified a belief that Rogers committed the murder. At most, a reason *288 able suspicion that Rogers had engaged in criminal activity so as to justify a police stop for questioning was present. See Codie v. State, 406 So.2d 117 (Fla. 2d DCA 1981). The police avoidance by itself would have been insufficient. McClain v. State, 408 So.2d 721 (Fla. 1st DCA 1982).
Rogers’ first statement, given shortly after the illegal arrest, was properly suppressed. This statement was elicited by exploitation of the illegal arrest. See Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). Nothing occurred prior to Rogers’ giving his first statement which would have been “sufficiently an act of free will to purge the primary taint” of the illegal arrest as required by Brown, at 602, 95 S.Ct. at 2261 (quoting Wong Sun v. United States, 371 U.S. 471, 486, 83 S.Ct. 407, 416, 9 L.Ed.2d 441 (1963)). Brown holds that the Miranda warnings do not by themselves always purge the taint. Brown factors to be considered in determining whether a statement made subsequent to an illegal arrest is the product of free will sufficient to purge the taint of the arrest so as to meet fourth amendment standards are: the proximity in time of the arrest and confession, the presence of intervening circumstances, and the purpose and flagrancy of official misconduct.
The second statement was made the following day. The concept of temporal proximity should not be applied mechanically. United States v. Perez-Esparza, 609 F.2d 1284 (9th Cir.1980). Indeed the defendant’s second inculpatory statement, which was suppressed, was made the following day in Dunaway v. New York, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979). See also State v. Morgan, 423 So.2d 478 (Fla. 1st DCA 1982). “[A]n illegal arrest or an illegal search presumptively taints and renders involuntary any subsequent confession or admission obtained from the victim of the arrest or search. The only exception ... is where there has been a clear and unequivocal break in the chain of illegality sufficient to dissipate the taint of the prior illegal action. These would certainly be rare cases .... ” Taylor v. State, 355 So.2d 180, 184 (Fla. 3d DCA 1978) (citations omitted). The only possible break in the causal chain in the instant case would be the phone conversation Rogers had with the public defender. Under those circumstances, where the attorney knew no details of the case, was awakened from sleep and gave only general advice to keep quiet, we find that the chain was unbroken and that the trial court properly suppressed the confession. A trial court’s decision on a motion to suppress a confession resulting from an illegal arrest comes to an appellate court with a presumption of correctness, and the evidence and all reasonable inferences capable of being drawn from the evidence should be interpreted in a light most favorable to sustain the trial court. Doubt should be resolved in the defendant’s favor. In close cases, courts are compelled to decide in favor of the individual rights of the citizen as guaranteed by the Constitution. Taylor v. State.
AFFIRMED.
SHAW, JOANOS and WIGGINTON, JJ., concur.