UNITED STATES of America

v.

Raul GUTIERREZ–GUAJARDO,
Jorge Gonzalez.

Crim. No. L–88–510.

United States District Court,
S.D. Texas,
Laredo Division.

Nov. 7, 1988.

Carlos Martinez, U.S. Atty., for U.S.

Sharon Trigo, Laredo, Tex., for Jorge Gonzalez.

Gustavo Acevedo, Laredo, Tex., for Raul Gutierrez–Guajardo.

## ORDER

KAZEN, District Judge.

Both Defendants have filed motions to suppress evidence. An evidentiary hearing on these motions was conducted on November 3, 1988.

■ These two Defendants were passengers in a blue and white pickup truck stopped by police officers in the northern part of the City of Laredo on September 21, 1988. The Court concludes that the initial stop of the vehicle was an investigative stop supported by reasonable suspicion of criminal activity. The officers had received a tip from an anonymous informant whose voice was recognized as a person who had given reliable information on several previous occasions. While the informant's description of the suspect vehicle was somewhat general, the agents located a vehicle fitting that description at a location within two blocks of the spot predicted by the informant. The subsequent erratic driving by the vehicle did justify an investigative stop. In that sense, the Government's reliance on *United States v. Martinez*, 808 F.2d 1050, 1053 (5th Cir.1987) is well placed.

■ No contraband was found at the time of the stop. In this regard, the informant's tip was erroneous. The only evidence discovered at the time of the stop was a piece of paper later determined to be a receipt issued by the United Parcel Service. This receipt was lying on the ground outside the truck at the time it was picked up by one of the officers. Officer Viera claims that Defendant Gutierrez tossed it to the ground but Gutierrez has sworn under oath that this is not true. He has denied that the receipt was taken off of his person, makes no claim of ownership or right to the receipt, and denies that it was ever in his possession. Under the circumstances, the Court concludes that Gutierrez has no standing to urge suppression of this receipt. No privacy right of his was affected. In fact, his motion to suppress makes no express reference to the receipt.

Similarly there is no basis for Defendant Gonzalez to challenge the discovery of this receipt. In support of his motion to suppress, Gonzalez has filed a memorandum which is somewhat confusing. At one point he concedes that the Defendant "might not have standing" under the "traditional analysis" of determining whether the defendant had "a legitimate expectation of privacy in the discarded paper." He then expresses the "opinion" that he nevertheless has standing to object because he was "arrested before the recovery of the tainted evidence." As best as this Court can understand it, Gonzalez is arguing that if he was illegally arrested, all evidence obtained from that point onward should be suppressed regardless of whether any privacy right of the Defendant was invaded. This is not the law. Like Gutierrez, Gonzalez makes absolutely no claim to the discarded receipt. It was not taken from him and he makes no claim of right or ownership to it. In fact, unlike Gutierrez, the Government offers no evidence that the receipt was ever in Gonzalez' possession. Neither Gonzalez nor Gutierrez owned the pickup truck, nor do they claim any interest in the contents of it. Further, the Court concludes that this paper was discovered on the ground after the stop of the vehicle but before the arrest of Gonzalez and Gutierrez.

■ There is likewise no basis to suppress the discovery of cocaine in a box at the UPS office. No privacy right of either Defendant was invaded. Again neither De-

fendant claims any right or interest in the box or its contents. It had already been delivered to UPS, whose personnel allowed the agents to submit the box to inspection by a narcotics dog. After the dog alerted, the agents obtained a search warrant from the United States Magistrate and there has been no attack on the validity of that warrant.

■ The remaining issue, therefore, is whether statements subsequently made by these Defendants at DEA headquarters should be suppressed. Notwithstanding the lack of any contraband in the truck, the agents then gave these Defendants their *Miranda* warnings, placed them in Government vehicles, and took them across town to the DEA headquarters. There they remained for approximately 6 hours. Eventually, after the dogs had alerted to the box at the UPS office and after the box had been opened pursuant to the search warrant, the Defendants were interviewed and gave a statement.

When these Defendants were removed from the scene of the stop and taken to the DEA headquarters, the investigative stop became an arrest. This is the holding in *Martinez*, 808 F.2d at 1055 and also in *United States v. Hernandez*, 825 F.2d 846, 851 (5th Cir.1987). The Court concludes that there was no probable cause to effect an arrest at that point. Facts discovered an hour or more later cannot serve to retroactively justify the arrest. The Court also rejects the notion that these Defendants travelled to DEA headquarters by consent. The arrest being illegal, the subsequent statements by the Defendants must be suppressed unless the Government can show that they were sufficiently an act of free will as to purge the primary taint of the illegal arrest. *United States v. Webster*, 750 F.2d 307, 324 (5th Cir.1984). *Miranda* warnings alone do not break the causal connection between the illegal arrest and the subsequent statement. *Id.* As in *Webster*, the Government here has failed to discharge its burden of demonstrating that the subsequent statements were untainted.

In conclusion, with respect to the UPS receipt and the cocaine itself, Defendants'

motions to suppress are DENIED. With respect to statements given by the Defendants at the DEA headquarters after their arrest, the motions to suppress are GRANTED.