558 So.2d 444 (1990)
STATE of Florida, Appellant,
v.
Walter Allen GIFFORD, Appellee.
No. 88-1910.
District Court of Appeal of Florida, Fourth District.
February 28, 1990.
Rehearing Denied April 19, 1990.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Deborah Guller, Asst. Atty. Gen., West Palm Beach, for appellant.
Richard L. Jorandby, Public Defender, and Louis G. Carres, Asst. Public Defender, West Palm Beach, for appellee.
POLEN, Judge.
In the course of a police investigation, appellee became a suspect in a sexual offense case. A police records check revealed an outstanding probation violation warrant in appellee's name. Even though appellee protested repeatedly that the warrant was no longer in force, police officers arrested him and brought him to a jail facility. Further inquiry into the warrant substantiated appellee's claims.[1] When the *445 jail authorities so informed the investigating officer, who was interviewing the two victims of the sexual offense at the hospital's emergency room, the officer instructed them to continue to detain appellee since the officer had probable cause to arrest him. When, approximately four hours later, the detective arrived at the jail, he advised appellee of his Miranda rights and conducted an interview during which appellee gave a written confession. Subsequent to the interview, the detective formally informed appellee that he was under arrest for the sexual offense crime.[2]
At the motion to suppress hearing, the trial court determined that while the continued detention was lawfully based on probable cause, the written statement was inadmissible because it flowed from an initial illegal arrest, the taint of which was never dissipated. We reverse.
A void or nonexistent warrant may not be the basis for a legal arrest and search. Martin v. State, 424 So.2d 994, 995 (Fla. 2d DCA 1983); Pesci v. State, 420 So.2d 380, 382 (Fla. 3d DCA 1983). Therefore, the fact that the arresting officers did not discover the warrant's invalidity until after the arrest did not transform it into a lawful one. Nor does the "good faith exception" to the exclusionary rule apply and validate the arrest. See United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).
However, subsequent to the initial unlawful arrest, when the detective ordered appellee's continued detention, appellee was lawfully "arrested" based on probable cause, advised of his Miranda rights and confessed. The record reflects ample support for the trial court's finding of a sufficient showing of independent probable cause for this arrest. The detective testified that, prior to interviewing appellee, he had probable cause because (a) he had interviewed the victims and witnesses; (b) while with the victims and sexual assault counselors at the medical center, he picked up bits and pieces of information from the road patrol commander; and (c) the vehicle described as an instrumentality of the offense by both victims was found at appellee's residence. This is much more than a mere suspicion lacking articulable facts or a bare conclusion. See Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527, reh'g denied, 463 U.S. 1237, 104 S.Ct. 33, 77 L.Ed.2d 1453 (1983).
While it would have been theoretically more pristine for the officer to follow protocol, especially given the illegality of the initial arrest, the sequence of events and totality of the circumstances were such that the officer had no realistic alternative but to order appellee detained rather than released and re-arrested. Detention by one officer at the direction of another is legal. United States v. Hensley, 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985); State v. Kehoe, 498 So.2d 560 (Fla. 4th DCA 1986), approved, 521 So.2d 1094 (Fla. 1988).
It is not dispositive that appellee was not informed of the carnal knowledge arrest until after receiving Miranda warnings and giving his confession. State v. Emery, 411 So.2d 341 (Fla. 4th DCA 1982). In Dunaway, the Supreme Court clearly stated that application of the fourth amendment's requirement of probable cause does not depend on whether an intrusion of this magnitude is termed an "arrest" under state law. No formal words are required stating that an individual is under arrest. The critical issue is whether probable cause for the arrest exists in light of the facts of each case. Dunaway v. New York, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979).
In determining whether a statement made subsequent to an illegal arrest is the product of free will, in addition to the giving of Miranda warnings, a fifth amendment threshold requirement, the court must satisfy fourth amendment concerns by examining the "causal connection" between the illegal arrest and the subsequent *446 statement. The court must consider: (1) the temporal proximity of the illegal arrest and the statement; (2) the presence of intervening circumstances; (3) and the purpose and flagrancy of the official misconduct. Dunaway, 442 U.S. at 219, 99 S.Ct. at 2260 [citing Brown v. Illinois, 422 U.S. 590, 603, 95 S.Ct. 2254, 2261, 45 L.Ed.2d 416 (1975)]. In the instant case, approximately four hours passed between the illegal arrest and appellee's statement, the elements that supported the detective's probable cause were intervening factors and the official conduct was performed in good faith.
Appellee's claim that his confession was involuntary due to intoxication, being under the influence of narcotics and fear of the detective, was a question of credibility which the trial court resolved adversely to appellee. The officers testified appellee exhibited no signs of fear or intoxication. Appellee's testimony indicates he imbibed no intoxicants for a period of fourteen hours prior to the confession. His testimony of inability to remember the entire interrogation is insufficient to establish intoxication. Thomas v. State, 456 So.2d 454 (Fla. 1984), judgment aff'd, sentence vacated and case remanded, 546 So.2d 716 (Fla. 1989). Nor was there evidence of coercion or threats made against appellee. His belief that the detective harbored ill will towards him was subjective, not caused by the detective's conduct and not grounds for suppression. Thomas, 456 So.2d at 458.
Granting the primary illegality of the arrest based on the warrant, appellee's confession, rather than resulting from exploitation of that illegality, was an act of free will sufficiently distinguishable to purge any "primary taint." Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). The trial court's order granting the motion to suppress is reversed.
GLICKSTEIN, J., concurs.
ESQUIROZ, MARGARITA, Associate Judge, dissents with opinion.
ESQUIROZ, MARGARITA, Associate Judge, dissenting.
I respectfully dissent. I cannot agree with the majority's holding that the record contains sufficient evidence of independently acquired probable cause to justify Walter Gifford's continued detention after he was admittedly arrested illegally at his home, without probable cause and without a valid warrant.
First, case law suggests that this after-the-fact determination of probable cause is not constitutionally permissible, at least not when the initial detention amounts to a full-scale arrest. See United States v. Gutierrez-Guajardo, 699 F. Supp. 608, 610 (S.D.Tex. 1988). See also Hayes v. Florida, 470 U.S. 811, 105 S.Ct. 1643, 84 L.Ed.2d 705 (1985); Spicy v. City of Miami, 280 So.2d 419, 422 (Fla. 1973); Carter v. State, 199 So.2d 324, 328 (Fla. 2d DCA 1967). This is not a case featuring an initial police contact generated by a reasonable or founded suspicion of criminal activity, which turns sequentially into full-blown probable cause to arrest as events lawfully progress. See, e.g., United States v. Hensley, 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985); United States v. Sharpe, 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985); § 901.151, Fla. Stat. (1987). Even assuming that a reasonable or founded suspicion of criminal activity  based on articulable facts to justify a temporary detention  existed at the time of the initial police contact with Gifford, it is clear that Gifford was not merely "temporarily detained" for investigatory purposes when he was involuntarily taken from his home to the jailhouse for the ostensible purpose of interrogation.[3] In Hayes, the Court cautioned:
[T]he line is crossed when the police, without probable cause or a warrant, forcibly remove a person from his home or *447 other place in which he is entitled to be and transport him to the police station, where he is detained, although briefly, for investigative purposes. We adhere to the view that such seizures, at least where not under judicial supervision, are sufficiently like arrests to invoke the traditional rule that arrests may constitutionally be made only on probable cause.
Hayes v. Florida, 105 S.Ct. at 1647.
Secondly, my review of the record fails to persuade me that it reflects probable cause for Gifford's arrest at any time prior to Gifford's jailhouse confession to Detective Walker.[4] Other than Walker's generalized claim to having acquired probable cause by the time he ordered Gifford's continued detention at the jail, the record's only discernible link between Gifford and the crime is Walker's bare bones statement that the vehicle used in the commission of the offense, as "described" by the victims, was found by other officers "at the residence where Mr. Gifford had been located." During his testimony, Walker did not provide even a general description of the vehicle, even though a description was allegedly given by the victims, nor did he refer to any other basis for the match presumably made with the vehicle parked outside Gifford's residence, which the arresting officers seized contemporaneously with Gifford's arrest. Detective Walker was the state's sole witness at the motion to suppress hearing, since neither the officer allegedly first at the scene, nor the officers who physically arrested Gifford and seized the vehicle, testified.
I must therefore disagree with the majority's conclusion that the trial court was furnished with a sufficient basis to find probable cause from Detective Walker's testimony that, prior to interviewing Gifford, he had probable cause because: (a) he had earlier interviewed the victims and witnesses, (b) he had picked up "bits and pieces" of information from the road patrol commander, while with the victims and sexual assault counselors at the medical center, and (c) the vehicle described as an instrumentality of the offense by both victims was found at Gifford's residence.[5] Walker did not relay, for the trier of fact's evaluation, what the factual data or "bits and pieces" of information gained from the interviews were. He did not say if the victims or witnesses gave a description of the offender, or if they positively inculpated Gifford in the crime, by name or otherwise. As stated, he also failed to provide any supporting facts for his statement claiming a connection between the "described" vehicle and the vehicle parked outside Gifford's residence.[6] His testimony therefore amounted to no more than naked conclusions, on the basis of which the trial court could do little more than ratify, as opposed to decide, the issue of probable cause. In short, for purposes of probable cause determination, the record is so devoid of factual information that the connection between Gifford and the commission of the *448 offense can only be made by innuendo at best.
It has long been held that a conclusion of probable cause, or a plain belief by the arresting officer that he has probable cause to arrest, without providing supporting facts, is insufficient to establish probable cause. See Carter v. State, 199 So.2d 324 (Fla. 2d DCA 1967); Urso v. State, 134 So.2d 810, 813 (Fla. 2d DCA 1961). Cf. Johnson v. State, 537 So.2d 655 (Fla. 5th DCA 1989); M.J. v. State, 399 So.2d 996 (Fla. 1st DCA 1981). See also Illinois v. Gates, 462 U.S. 213, 103 S.Ct 2317, 76 L.Ed.2d 527 (1983), reh'g. denied, 463 U.S. 1237, 104 S.Ct. 33, 77 L.Ed.2d 1453 (1983); Nathanson v. United States, 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159 (1933). "Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others," Illinois v. Gates, 103 S.Ct. at 2333.[7]
It is well established that at a motion to suppress hearing, once the defendant has initially shown a warrantless search and seizure of his person, house or belongings, the burden shifts to the state to establish that the case falls within an exception to the Fourth Amendment warrant requirement. See Walker v. State, 433 So.2d 644, 645 (Fla. 2d DCA 1983); Morales v. State, 407 So.2d 321, 325 (Fla. 3d DCA 1981); State v. Dodd, 396 So.2d 1205, 1206-08 (Fla. 3d DCA 1981); State v. Hinton, 305 So.2d 804, 807-08 (Fla. 4th DCA 1975). See also Raffield v. State, 351 So.2d 945 (Fla. 1977); St. John v. State, 363 So.2d 862, 863-64 (Fla. 4th DCA 1978); Shepherd v. State, 343 So.2d 1349 (Fla. 1st DCA), cert. denied, 352 So.2d 175 (1977); Bicking v. State, 293 So.2d 385 (Fla. 1st DCA 1974). The burden of showing admissibility of defendant's statement rests on the prosecution. Dunaway v. New York, 442 U.S. 200, 99 S.Ct. 2248, 2259, 60 L.Ed.2d 824 (1979); Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 2262, 45 L.Ed.2d 416 (1975). Our reviewing function, limited as it is by the record, is similarly crippled by such a failure of proof. The state must come forward with sufficient evidence, on the record, establishing the basis for an arrest based on probable cause. See Urso v. State, 134 So.2d at 813. See also Carter v. State, 199 So.2d at 328-35. As held in Urso:
The trial court in this case was confronted with a difficult question, but we think there was error in not requiring the State to establish by additional and more convincing evidence a clear legal basis for the arrest ... We are convinced that the statements of the officers to the effect that they knew the identity of the appellants and felt they had reasonable grounds for believing that the appellants had committed a felony were, without more, insufficient. We do not hold, however, that such grounds are not susceptible of proof.
Urso v. State, 134 So.2d at 813.
Finally, one other perspective of Fourth Amendment protection, not addressed by the majority, applies to Gifford's arrest. Even if armed with probable cause, the officers could not lawfully enter Gifford's home to arrest him without a warrant, absent exigent circumstances. Such a warrantless seizure of a person inside his home is presumptively unreasonable and violates the Fourth Amendment, as decreed in Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). See also Eason v. State, 546 So.2d 57 (Fla. 1st DCA 1989). Gifford was arrested at his home on the strength of a probation violation warrant *449 that turned out not to exist,[8] and no exigent circumstances are urged to justify the intrusion.
The majority recognizes the principle that a void or nonexistent warrant may not be the basis for a legal arrest and search, Martin v. State, 424 So.2d 994, 995 (Fla. 2d DCA 1983); Pesci v. State, 420 So.2d 380, 382 (Fla. 3d DCA 1983), and acknowledges that the "good faith exception" to the exclusionary rule adopted in United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1971), does not change the result, even if the arresting officers acted under a good faith belief that the warrant was valid. United States v. Gonzalez, 682 F. Supp. 46 (S.D.Fla. 1987); Albo v. State, 477 So.2d 1071, 1073-74 (Fla. 3d DCA 1985); Dean v. State, 466 So.2d 1216, 1217-18 (Fla. 4th DCA 1985).[9] Indeed, an otherwise illegal arrest is not insulated from challenge by the fact that the arresting officer relies on erroneous information dispatched by a fellow officer or employee. Albo v. State, 477 So.2d at 1071; Dean v. State, 466 So.2d at 1216. Yet the majority concludes that, given the sequence of events and the totality of the circumstances, Detective Walker had no realistic alternative but to keep Gifford in custody. Based on the contents of this record, I am unable to agree.
When the initial detention is unlawful, however, a subsequent confession may still be admissible as evidence against the defendant. The pertinent inquiry in this regard focuses on whether the causal link between the illegal police conduct and any incriminating statement obtained from the arrestee during the unlawful detention is sufficiently attenuated so as to dissipate the taint of the primary illegality and permit the use of such statement at trial. Dunaway v. New York, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Applying the factors approved in Brown for this determination, the majority concludes that Gifford's confession was an act of free will sufficiently distinguishable from the initial illegality to purge the primary taint. For this conclusion, the majority once again relies on the premise that Walker had independently developed probable cause by the time he interviewed Gifford. The majority takes the view that the four-hour span between arrest and statement, the good faith conduct of the officers, and the elements that supported probable cause, constituted intervening factors that broke the causal connection between the illegal arrest and the statement. But I suggest that even if Walker indeed acquired such probable cause, the fact remains that the objective existence of probable cause away from the jailhouse need not necessarily affect the arrestee's exercise of free will while confined. In this instance, Gifford was never informed of any such newly acquired probable cause. His unrebutted testimony was that, except to complain of the warrant's inefficacy and up until the time that he was interviewed by Walker, he did not communicate with anyone else throughout his detention. Gifford was held handcuffed or in a holding cell for approximately four hours, and the purpose of his detention was for interrogation. While it is true that Gifford was advised of his Fifth Amendment rights, the giving of Miranda warnings is merely a threshold requirement for Fourth Amendment analysis, and the warnings do *450 not suffice, by themselves, to render the statement "sufficiently an act of free will to purge the primary taint." Dunaway v. New York, 99 S.Ct. at 2259-60; Brown v. Illinois, 95 S.Ct. at 2260-63; State v. Rogers, 427 So.2d 286, 288 (Fla. 1st DCA 1983).
In a written order containing extensive findings of fact and conclusions of law, the trial court found that there were no intervening circumstances that served to break the causal link between Gifford's illegal arrest and his subsequent statement. As such, Gifford's statement was not sufficiently an act of free will to purge the primary taint. The trial court's findings are amply supported by the record, and I see no reason to disturb them. I would therefore affirm the trial court's order granting Gifford's motion to suppress the statement.
NOTES
[1] The warrant had been executed, but on March 17, 1988, ten days prior to this arrest, appellant's probation had been reinstated.
[2] The state subsequently filed an information charging appellant with the crimes of having carnal intercourse with an unmarried person under the age of eighteen and committing a lewd and lascivious act on a child under sixteen, in violation of sections 794.05(1) and 800.04, Florida Statutes (1987).
[3] The detective investigating the sexual offense, Bill Walker, stated that he instructed the arresting officers to "provide transportation for [Gifford] to the county jail facility, that's where we have the interview rooms, ... for interrogations and interviews." It was not disputed that Gifford was handcuffed and placed in a holding cell, and that he was not free to leave throughout the entire duration of his detention.
[4] From the onset of the police investigation to Gifford's confession, the events of the day transpired in the following chronological sequence: the sexual offense occurred overnight; the police began investigating it in the morning; by noon Gifford was arrested at his home on the strength of a probation violation warrant while the investigation was ongoing; after transporting Gifford to the jail, the arresting officers discovered that the warrant was no longer outstanding; Detective Walker ordered the officers to keep Gifford detained while Walker continued his investigation; Walker arrived at the jail at 3:50 p.m., proceeded to interview Gifford for just under one hour, and took a written statement from him; at the conclusion of the statement, Walker formally arrested Gifford for the crime of having intercourse with an unmarried person under the age of 18.
[5] Walker's testimony on probable cause is literally paraphrased in the statements appearing under (a), (b), and (c) above.
[6] By referring to these specific factual circumstances, I do not imply that these facts, or even a given number of them, must always be elicited by the state to meet its burden of establishing probable cause for a warrantless arrest on the record, and my decision is not to be interpreted as setting any particular standard or requirement of proof, whether from a quantitative or qualitative standpoint. I merely suggest that what the state did present on this record is, in my view, insufficient for the trier of fact to find probable cause.
[7] Both Illinois v. Gates and Nathanson v. United States involve probable cause affidavits for the issuance of search warrants. But the legal principles that emerge from these cases apply with equal, if not greater, force to probable cause determinations as the basis for searches and arrests without a warrant. "When a search warrant is based upon a magistrate's rather than a police officer's, determination of probable cause, the reviewing courts will accept evidence of a less "judicially competent or persuasive character that would have justified an officer acting on his own without a warrant,'... ." Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 1512, 12 L.Ed.2d 723 (1964). See also Giordenello v. United States, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958). Probable cause cannot be founded on mere suspicion, but must be based on facts known to exist. Brown v. State, 330 So.2d 861, 862 (Fla. 4th DCA 1976).
[8] See majority opinion, note 1.
[9] The majority also correctly notes that a suspect may be detained at the direction of another police officer. But this course is valid only when the officer initiating the detention has either a founded suspicion justifying an investigatory stop or probable cause to arrest, although the officer receiving the instruction has neither. United States v. Hensley, 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985); Berry v. State, 493 So.2d 1098, 1100 (Fla. 4th DCA 1986). Thus, "the rule works both ways: to validate an arrest when the responsible officers have probable cause and to vitiate it when, as here, none objectively exists." Albo v. State, 477 So.2d at 1073. See also Whiteley v. Warden of Wyo. Penitentiary, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971). As Judge Schwartz wrote in Albo: "[J]ust as the police may permissibly act upon their collective knowledge, so they are restrained by their collective ignorance." Albo v. State, 477 So.2d at 1074.