PER CURIAM.
A petition for delinquency was filed against J.P. charging him with unlawful use of a false name and resisting a police officer without violence. At the rest of the State’s case, defense moved for a judgment of acquittal on both counts, both of which were denied. J.P. was adjudicated delinquent as charged and later committed to a Level 6 moderate-risk facility. This appeal challenges the denial of J.P.’s motions for a judgment of acquittal on both counts. For the reasons explained below, we reverse.
Officer Jonathan Kersey testified that while patrolling Pompano Beach on the early morning of Dec. 29, 2001, he received a backup call to respond to the 7-11 on Dixie Highway. He arrived around 2:00 a.m. and met with Sergeant Oprea who *1264 had two black males outside a dark-colored car in the 7-11 parking lot. Kersey began to recount what Oprea had told him, but the defense lodged an objection which was sustained. Kersey then stated that after speaking with Oprea he asked the two individuals for identification. Neither of the individuals had identification; J.P. responded his name was “David Moinene.” Kersey then issued a traffic citation made out to “David Moinene.” Kersey then told the individuals not to drive the motor vehicle out of the parking lot until one of them had a driver’s license in his possession, or their parents came.
Kersey then left the scene. About twenty minutes later he was sitting at a red light adjacent to the 7-11 when he saw the vehicle back out of its parking space without either its headlights or taillights on. Kersey caught up with the car to see if an adult was driving; he couldn’t see so he activated his lights to initiate a traffic stop. The car then accelerated and sped away. It eventually blew a rear tire and pulled in front of a house. Kersey then saw the passenger side door fly open and J.P. bailed out of the car and ran away. The driver [co-defendant] locked the car door.
In response to defense questioning, Ker-sey stated that in his opinion, he was not detaining the individuals at the 7-11, but rather it was a citizen contact in that they were free to leave. Sgt. Oprea had initially detained them, for the purpose of finding out whether or not they were trespassing. Kersey did not know what Oprea had seen that had raised his suspicion. Sgt. Oprea did not testify.
J.P. contends the trial court erred in denying his motion for judgment of acquittal[1] on count I, the giving of a fictitious name pursuant to section 901.36(1), Florida Statutes (2001). We agree. A motion for judgment of acquittal pertains to the legal sufficiency of the state’s evidence. If the trial evidence taken in a light most favorable to the state does not support a conviction, the motion must be granted. State v. Rivera, 719 So.2d 335, 337 (Fla. 5th DCA 1998) (citations omitted).
It is undisputed that J.P. and another individual were being detained by Sgt. Oprea, at 2 a.m. outside a 7-11, at the time Kersey arrived. Sgt. Oprea relayed some information to Kersey, and Kersey proceeded to ask J.P. for identification. A reasonable juvenile in J.P.’s position would have believed he was not free to leave, and felt compelled to respond to Officer Kersey’s request. See D.G. v. State, 714 So.2d 644 (Fla. 4th DCA 1998)(finding encounter was not consensual where juvenile was ordered to approach officer, and that officer did not (merely) approach juvenile or ask whether he minded if the officer asked him some questions).
In order to stop and detain a person for investigation, an officer must have a reasonable suspicion that the person has committed, is committing, or is about to commit a crime. Whether an officer has a “founded suspicion” for a stop depends on the totality of the circumstances, interpreted in light of the officer’s knowledge and experience at the time of the stop. A mere “hunch” that criminal activity may be occurring is not sufficient. See Ippolito v. State, 789 So.2d 423, 425 (Fla. 4th DCA 2001).
*1265 The State is attempting to rely on the “fellow officer rule” as justification for the legality of JJP.’s detention. See State v. Maynard, 783 So.2d 226 (Fla.2001) (Florida courts apply the “fellow officer rule,” which operates to impute the knowledge of one officer in the chain of investigation to another). The oft-cited case of Berry v. State, 493 So.2d 1098 (Fla. 4th DCA 1986), is illustrative of the application of this rule.
In Berry, Officer Bryant observed two individuals approach a car outside a fast-food restaurant in a suspicious manner; based on his observations and experience, Bryant believed they had attempted to sell narcotics to the couple in the car. He then radioed a request that an individual, later identified as appellant, be stopped. Based on the radio information, another officer, Officer Temple, stopped appellant and patted him down. When he radioed Officer Bryant to inform him he had stopped appellant, Bryant informed him to place appellant under arrest, which he then did. This court held that Officer Bryant had a reasonable founded suspicion to stop and temporarily detain appellant based on his observations and experience. Therefore, under the “fellow officer rule,” when Officer Temple received radio information to stop appellant, he had sufficient grounds to do so. Id. at 1100.
The State urges this court to impute Sgt. Oprea’s observations to Officer Ker-sey. More specifically, that reasonable suspicion should be imputed to Officer Kersey because Sgt. Oprea had reasonable suspicion. However, there is no record evidence of Oprea’s observations. There is no evidence of whether or not the initiating officer had a well-founded “reasonable suspicion” to detain J.P. In other words, there is nothing on the record to impute to Officer Kersey.
Since there are no observations of Sgt. Oprea, on the record, all that is left are Kersey’s observations. Still, the State contends Officer Kersey had, based on the totality of the circumstances, a “reasonable suspicion” that J.P. had committed, was committing, or was about to commit the crime of trespassing, when he asked him for identification. We disagree.
There is no record evidence that Kersey was aware that J.P. had been asked to leave the premises. Mere presence in the parking lot of an open quasi-public business is insufficient to constitute the crime of trespass. See Smith v. State, 778 So.2d 329, 331 (Fla. 2d DCA 2000) (holding that when an invitation has been extended to enter an open business, actual communication is necessary to put a person on notice that he is no longer welcome on the property and may be arrested for trespassing; otherwise, where a store is open for business, but its parking lot is posted against trespassing, everyone who enters the lot on his or her way to the store risks arrest for trespass).
As such, Officer Kersey lacked the authority to lawfully detain J.P., and request identification. Lawful detention is a condition precedent to commission of the crime of giving a fictitious name under section 901.36. See Belsky v. State, 831 So.2d 803, 804-5 (Fla. 4th DCA 2002). Since the State failed to establish every element of the crime of giving a fictitious name the conviction pursuant to section 901.36 is reversed.
J.P. also contends the trial court erred in denying his motion for judgment of acquittal on count II, resisting without violence, a violation of section 843.02, Florida Statutes (2001). Again, we agree.
The elements of resisting an officer without violence require that (1) the officer be engaged in the lawful execution of a legal duty and (2) the defendant’s action constitute obstruction or resistance *1266 of that lawful duty. H.H. v. State, 775 So.2d 397, 398 (Fla. 4th DCA 2000). As a general rule, flight, standing alone, does not constitute obstructing an officer nor does it give rise to a well-founded suspicion of criminal activity. Mosley v. State, 739 So.2d 672, 675 (Fla. 4th DCA 1999). Rather, an individual may be guilty of unlawfully obstructing an officer if he flees while knowing the officer’s intent to detain him and the officer is justified in making a stop pursuant to the Stop and Frisk statute. See H.H., 775 So.2d at 398. On similar facts, two of our sister courts have held flight by the passenger of a vehicle did not constitute the crime of resisting without violence pursuant to section 843.02. See D.M. v. State, 681 So.2d 797 (Fla. 2d DCA 1996); S.G.K. v. State, 657 So.2d 1246 (Fla. 1st DCA 1995).
The mere flight of J.P., a passenger in a stopped vehicle who was not suspected of any personal criminal behavior, is insufficient to sustain a conviction for resisting without violence pursuant to section 843.02. Therefore, J.P.’s conviction for resisting without violence is also reversed.
REVERSED.
WARNER, POLEN and GROSS, JJ., concur.

. Though referred to as a judgment of acquittal, under the Rules of Juvenile Procedure, the proper title of the motion should have been a Motion for Judgment of Dismissal. See Fla. R. Juv. P. 8.105(k). Notwithstanding, this court uses the same standard on review as for a judgment of acquittal. See W.E.P. Jr. v. State, 790 So.2d 1166 (Fla. 4th DCA 2001).