STRINGER, Judge.
J.D.H. appeals from the withhold of adjudication and the sentence imposed after he pleaded guilty to possession of cocaine following the trial court’s denial of his dispositive motion to suppress. Because J.D.H. was arrested without probable cause and because the contraband was found in a search incident to that unlawful arrest, we reverse and remand for discharge.
The facts in this ease are essentially undisputed. For reasons not developed in the record, members of the Tampa Police Department decided to conduct a trespass investigation at a basketball court in the Robles Park public housing project at 11 p.m. on the night of February 6, 2006. Officer Nicholas Wilson testified that the basketball court was closed at that time of night, but the court is not fenced and there are no signs indicating the operating hours of the court. Instead, he testified that the operating hours for the basketball court are in the lease agreement signed by residents of Robles Park. The only signs in the area are “No Loitering” signs. Both Officer Wilson and Officer Felicia Pécora testified that Robles Park is known for marijuana sales after dark. Both officers also testified that their reason for going to this basketball court was to conduct trespass investigations which, in their experience, would inevitably lead to drug arrests.
Shortly after 11 p.m., Officer Wilson and Officer Mack Graham drove toward the basketball court in a marked patrol car. Officer Pécora waited a short distance *1130 away hidden between two buildings. As Officer Wilson approached the court in his car, he saw a group of teenage boys and young adult men congregating on the court. When someone in the group spotted the officers, the entire group fled, running in different directions.
For reasons also not developed in the record, Officer Graham gave chase to a boy who turned out to be J.D.H. He yelled for J.D.H. to stop, but J.D.H. continued running. When J.D.H. ran between the buildings where Officer Pécora was waiting, she also ordered J.D.H. to stop. J.D.H. did not immediately stop, but ultimately stopped when Officer Pécora pointed her taser at J.D.H. When J.D.H. stopped, Officer Pécora immediately arrested him for “not obeying the order of Officer Graham, and my order, for him to stop.” A search incident to the arrest revealed the cocaine.
The trial court found that the officers had a reasonable suspicion to stop J.D.H. due to his flight from the officers in a high-crime area. The court recognized that while the flight would provide reasonable suspicion to stop J.D.H., it would not, standing alone, give the officers probable cause to arrest him for obstructing or opposing an officer without violence. However, despite this finding and the clear testimony of the officers that J.D.H. was immediately arrested rather than simply stopped, the trial court denied J.D.H.’s motion to suppress. This was error.
This court and others have repeatedly held that the simple act of fleeing from officers, without more, does not constitute the offense of resisting or obstructing an officer. See, e.g., Yarusso v. State, 942 So.2d 939, 943 (Fla. 2d DCA 2006); J.J.N. v. State, 696 So.2d 804, 805 (Fla. 2d DCA 1997); M.M.H. v. State, 929 So.2d 628, 629 (Fla. 3d DCA 2006); Baker v. State, 813 So.2d 1044, 1046 (Fla. 4th DCA 2002). Instead, an individual is guilty of resisting or obstructing an officer by flight only if he flees while knowing of the officer’s intent to detain him and if the officer is justified in detaining the individual before he flees. Yarusso, 942 So.2d at 943; J.J.N., 696 So.2d at 805; V.L. v. State, 790 So.2d 1140, 1142-43 (Fla. 5th DCA 2001) (holding that to use flight as a basis for an arrest for resisting or obstructing an officer, the State must prove that “(1) the officer had an articulable well-founded suspicion of criminal activity that justifies the officer’s detention of the defendant, and (2) the defendant fled with knowledge that the officer intended to detain him or her”). In this case, it appears that J.D.H. did flee while knowing of the officers’ intent to detain him. However, neither Officer Wilson nor Officer Pécora testified to any facts that would support a legal basis to detain J.D.H. before he fled. Accordingly, because J.D.H. fled from officers who had no legal right to detain him, he could not have been lawfully arrested for resisting an officer without violence.
The State argued before the trial court that the officers had a reasonable suspicion that J.D.H. was trespassing before he fled. According to the State, because the officers could lawfully detain J.D.H. on suspicion of trespassing, his flight did constitute resisting without violence. However, the facts do not support this argument.
The crime of trespass occurs when an individual, without being authorized, licensed, or invited, willfully enters or remains on property as to which notice •against entering or remaining has been given, either by actual communication to the offender or by posting or fencing. See § 810.09(l)(a), Fla. Stat. (2006). Here, there was no evidence that J.D.H. had been given a trespass notice or had other actual notice that the basketball court was closed and thus that his presence there was unlawful. Further, the evidence was *1131 undisputed that the basketball court was not posted or fenced. In the absence of such evidence, the officers had nothing other than a hunch that J.D.H. was trespassing at the basketball court. They possessed no articulable facts to reasonably suspect that J.D.H. had unlawfully entered or remained on the basketball court. Thus, they had no reasonable suspicion sufficient to detain J.D.H. for trespassing.
The State suggests that the notice to residents in their leases concerning the opening times of the basketball court was sufficient to constitute actual notice to J.D.H. that he was trespassing. However, the State presented no evidence that J.D.H. was a resident of the Robles Park housing project. Further, J.D.H., as a sixteen-year-old, would not have been a party to the lease agreement. Thus, this lease provision, even assuming that it exists, would not be sufficient to give the officers the reasonable suspicion necessary to support the detention of J.D.H.
The State also suggests that the officers had a reasonable suspicion that J.D.H. was “loitering” and thus could have detained him for that offense. However, the crime of loitering is not committed simply by standing under a “no loitering” sign. Instead, the crime of loitering occurs when the defendant is loitering and prowling in a manner not usual for law-abiding citizens and under circumstances that warrant a justifiable and reasonable concern for the safety of persons or property in the area. R.M. v. State, 754 So.2d 849, 850 (Fla. 2d DCA 2000); J.S.B. v. State, 729 So.2d 456, 457 (Fla. 2d DCA 1999). Further, the defendant’s actions must be so alarming as to create an imminent threat to public safety. R.M., 754 So.2d at 850.
Here, neither Officer Wilson nor Officer Pécora testified to any facts that would establish that J.D.H. was engaged in conduct that created a justifiable or reasonable concern for the safety of persons or property in the area. While both testified that marijuana was sometimes sold from this basketball court,- neither observed J.D.H. involved in any drug activity or any other activity that would raise a concern for public safety. In the absence of such evidence, the officers did not have a reasonable suspicion that J.D.H. was committing, had committed, or was about to commit the crime of loitering, and therefore they had no basis to detain him for this crime.
Moreover, the officers were not justified in detaining J.D.H. on suspicion of loitering based solely on the existence of the “no loitering” sign. In Slydell v. State, 792 So.2d 667 (Fla. 4th DCA 2001), the court rejected the State’s argument that the existence of a “no trespassing” sign coupled with the property owner’s agreement that the police could stop and investigate persons on their property was sufficient to support a investigatory detention. In doing so, the court stated,
A property owner’s grant of authority to police officers to investigate trespassing on the owner’s premises does not confer any greater authority upon law enforcement during police-citizen contact than do our Constitution and laws. Officers still need a reasonable and articulable suspicion that a person is engaged in criminal activity for a Terry stop.
Id. at 672 (footnote omitted). Thus, despite the presence of the “no loitering” sign, the officers still needed to have a reasonable and articulable suspicion that J.D.H. was committing the crime of loitering before they could lawfully detain him. Because they had no such suspicion, there was no lawful basis to detain J.D.H.
Finally, the State suggests that J.D.H.’s flight in a high-crime area gave the officers probable cause to arrest him under Illinois v. Wardlow, 528 U.S. 119, *1132 120 S.Ct. 673, 145 L.Ed.2d 570 (2000). The State starts with the premise that J.D.H.’s flight in a high-crime area gave the police reasonable suspicion to stop him under Wwrdlow. Then, according to the State, because the police now had the reasonable suspicion necessary to stop J.D.H. due to his flight, that same flight provided probable cause to believe that he had committed the offense of obstructing or opposing the officers without violence. However, Wardlow does not support this circular reasoning. As the Third District noted,
Wardlow did not criminalize running from the police. Wardlow only held that running from the police in a high crime area gave the police reasonable suspicion to allow “officers confronted with such flight to stop the fugitive and investigate.” Wardlow, 528 U.S. at 125, 120 S.Ct. 673. Under Wardlow, this creates a justification for the police to conduct nothing more than a Terry stop, a “minimal intrusion, simply allowing the office to briefly investigate further. If the officer does not learn facts rising to the level of probable cause, the individual must be allowed to go his way.” Id. at 126, 120 S.Ct. 673.
D.T.B. v. State, 892 So.2d 522, 524 (Fla. 3d DCA 2004). Thus, the Third District rejected the State’s position that D.T.B.’s flight in a high-crime area, standing alone, created not only a reasonable suspicion to stop D.T.B., but also probable cause to arrest him for resisting or obstructing an officer without violence. Id.
In this case, the State likewise contends that J.D.H.’s flight, standing alone, created both the reasonable suspicion necessary to stop him under Wardlow and the probable cause needed to arrest him for resisting an officer without violence. Because such a holding would improperly criminalize the simple act of fleeing from an officer and expand the holding of Wardloiv beyond its plain language, we reject this argument.
Because neither Officer Wilson nor Officer Pécora testified to any facts that would support a reasonable suspicion that J.D.H. was committing, had committed, or was about to commit a crime before he fled, his resistance to their attempts to detain him did not create the probable cause necessary to arrest him for resisting or opposing an officer without violence. In the absence of such probable cause, J.D.H.’s arrest was illegal, and the items seized during the search incident to this unlawful arrest should have been suppressed. Accordingly, we reverse the withhold of adjudication and sentence and remand for discharge.
Reversed and remanded for discharge.
NORTHCUTT, C.J., and SILBERMAN, J., Concur.