981 So.2d 562 (2008)
Rashion GRAY, Appellant,
v.
STATE of Florida, Appellee.
No. 4D07-1664.
District Court of Appeal of Florida, Fourth District.
May 7, 2008.
Rehearing Denied June 5, 2008.
*563 Carey Haughwout, Public Defender, and John M. Conway, Assistant Public Defender, Maurissa R. Jones, Certified Legal Intern, West Palm Beach, for appellant.
Bill McCollum, Attorney General, Tallahassee, and Mark J. Hamel, Assistant Attorney General, West Palm Beach, for appellee.
TAYLOR, J.
Rashion Gray pled no contest to charges of burglary of a dwelling while armed, grand theft of a firearm, possession of a firearm or ammunition by a convicted felon, criminal mischief, giving a false name, carrying a concealed firearm, and carrying a concealed weapon. He reserved the right to appeal the denial of his dispositive motion to suppress all physical and testimonial evidence. We reverse denial of appellant's motion to suppress because the police lacked the requisite probable cause to arrest appellant.
On August 23, 2005, around 11:15 p.m., Officer Gioia of the Sebastian Police Department saw appellant walking southbound on Barber Street. The officer had gotten out of his patrol car to serve a warrant on a different person. As he returned to his car, the officer saw appellant cross the street while still walking southbound. Officer Gioia watched appellant walk toward a house on the street, "side-stepping" diagonally up the driveway between two cars. The officer could not see what appellant was doing. He asked appellant to come over and talk to him. Appellant hesitated for a few seconds but then approached the officer. Officer Gioia *564 asked him where he was going. Appellant told the officer his name and said that he was coming from a friend's house. A second police officer, Officer Vafiades, searched appellant with his consent and found no contraband or weapons. The officers allowed appellant to continue on his way.
As Officer Gioia started to leave, he reflected on what he had observed and thought that the situation seemed a "little odd." He then returned to the area where appellant had been standing. He noticed a black powder revolver lying in the grass. The grass under the revolver was soaked from rain, but the revolver was dry. Officer Gioia never saw appellant reach into his pocket or throw anything during the encounter. The officer retrieved the gun, then radioed the other officers on his shift and notified them to stop appellant.
Officer Joseph Byers, who was on road patrol at the time, located appellant after hearing the BOLO issued by Officer Gioia. Based only on the radioed information, Officer Byers stopped appellant and immediately arrested him. He had appellant place his walking stick on the hood of his police car, handcuffed him, and read him his Miranda rights. Officer Byers then asked appellant his name. When appellant responded, the officer told him that he did not believe him. At that point, appellant admitted that he had given Officer Gioia a false name. He said that he did so because he had walked off a work program. Appellant also confessed that he had committed a burglary. Before this admission, the police had no knowledge of the burglary. Officer Byers opened appellant's walking cane and found a sword inside it. Appellant led Officer Byers to the location of the burglary he committed. This, in turn, led to the discovery of additional incriminating evidence.
The trial court denied appellant's motion to suppress all physical evidence and statements. The court determined that appellant's initial contact with Officer Gioia was a lawful police citizen encounter. It further found that, after Officer Gioia discovered the pistol on the grass, the police had probable cause to arrest appellant for carrying a concealed firearm and/or weapon or trespassing. In addition, the court decided that, even if no probable cause existed, the officers had a "founded, articulable suspicion that this defendant was either carrying a concealed firearm, or had just committed it and/or trespassed in one officer's presence." The court concluded that Officer Gioia's probable cause transferred to fellow officer Byers, who was then permitted to arrest appellant.
Appellant entered a plea of no contest to all charges, reserving his right to appeal the court's ruling on the motion to suppress. The trial court and the parties agreed that the motion to suppress was legally dispositive.
When reviewing a trial court's decision on a motion to suppress, an appellate court must "`defer to the trial court's factual findings but review legal conclusions de novo.'" Castella v. State, 959 So.2d 1285, 1289 (Fla. 4th DCA) (quoting Pantin v. State, 872 So.2d 1000, 1002 (Fla. 4th DCA 2004)), rev. denied, 968 So.2d 556 (Fla.2007). There are three basic levels of police-citizen encounters under Florida law. Popple v. State, 626 So.2d 185, 186 (Fla.1993). The first is a consensual encounter, during which a citizen can either comply with the police officer's requests or ignore them and leave. Id.
The second level is an investigatory stop under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Popple v. State, 626 So.2d at 186. During an investigatory stop, a police officer may "reasonably detain a citizen temporarily if *565 the officer has a reasonable suspicion that a person has committed, is committing, or is about to commit a crime." Id. The officer's "reasonable suspicion" must be "well-founded" and "articulable." Id.
The third level is an arrest, which "must be supported by probable cause that a crime has been or is being committed." Id. Reviewing whether probable cause existed at the time of an arrest requires a very fact-specific analysis. Maryland v. Pringle, 540 U.S. 366, 370-71, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003). "To determine whether an officer had probable cause to arrest an individual, we examine the events leading up to the arrest, and then decide `whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." Id. at 371, 124 S.Ct. 795 (quoting Ornelas v. United States, 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)).
We agree with the trial court's conclusion that Officer Gioia's initial encounter with appellant was a consensual encounter. The record supports the trial court's determination that appellant voluntarily complied with the officer's request to come over and talk to him and that he consented to a frisk. However, the record reveals no events or observations by the officer either before, during, or after that initial encounter that gave rise to probable cause for arresting appellant on charges of carrying a concealed firearm and/or weapon or trespassing. At best, the circumstances provided the officer with reasonable suspicion for an investigatory stop.
Contrary to the state's contention, the evidence does not show that Officer Byers responded to the BOLO by simply stopping and frisking appellant. Instead, the record suggests that the officer immediately arrested appellant. Officer Byers handcuffed appellant and administered Miranda warnings to him before obtaining incriminating information from him. Moreover, Officer Byers testified that appellant was not free to leave during this initial encounter. Before arresting appellant, Officer Byers did not personally witness or have any independent knowledge of any criminal activity committed by appellant. He merely saw appellant walking down the street and acted entirely on radio transmissions from Officer Gioia. Pursuant to the "fellow officer" rule, Office Byers was allowed to rely upon communications from Officer Gioia in arresting appellant if Officer Gioia had probable cause. Whiteley v. Warden, Wyoming State Penitentiary, 401 U.S. 560, 568, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971); State v. Maynard, 783 So.2d 226 (Fla.2001); J.P. v. State, 855 So.2d 1262, 1265 (Fla. 4th DCA 2003). Thus, the validity of the arrest in this case turns on whether Officer Gioia had probable cause to arrest appellant. See Hansen v. State, 385 So.2d 1081, 1086 (Fla. 4th DCA 1980).
Officer Gioia had probable cause to arrest appellant if, at the time he issued the BOLO, he had sufficient knowledge and information to believe that a crime had been or was being committed by appellant. The trial court concluded that the officer had probable cause to arrest appellant for either carrying a concealed firearm and/or weapon, contrary to Fla. Stat. 790.01(1) or (2) and Fla. Stat. 790.02, or trespassing.
Trespassing on property other than a structure or conveyance occurs when:
(1)(a) A person who, without being authorized, licensed, or invited, willfully enters upon or remains in any property other than a structure or conveyance:
1. As to which notice against entering or remaining is given, either by actual communication to the offender or by *566 posting, fencing, or cultivation as described in s. 810.111; or
2. If the property is the unenclosed curtilage of a dwelling and the offender enters or remains with the intent to commit an offense thereon, other than the offense of trespass,
§ 810.09(1)(a)1., Fla. Stat.
At the hearing on the motion to suppress, no evidence was presented that Officer Gioia had information about whether appellant was "authorized, licensed, or invited" to enter the property or whether he had been given "notice against entering or remaining" by the owner of the property. Further, the officer did not testify that there were posted signs on the driveway or lawn of the house restricting access. In sum, the facts and circumstances within the officer's knowledge were insufficient to warrant a reasonable belief that appellant had committed or was committing trespass.[1]
Likewise, Officer Gioia did not have sufficient knowledge and information to form probable cause to believe that appellant was carrying a concealed firearm or weapon. The black powder pistol was found on the grass after appellant had left the area. As the trial court stated in its written order, the officer could not see what appellant was doing when he was walking up the driveway and standing in the yard. The back-up officer's initial search of appellant revealed no weapon, and Officer Gioia did not see appellant carrying the pistol "on or about his person" or see him discard it or make any furtive movements whatsoever. The officers did not investigate the matter further and gather enough information to raise a reasonable suspicion to the level of probable cause necessary for arresting appellant for these offenses. Thus, even if Officer Byers was justified in stopping appellant based on the BOLO issued by Officer Gioia, he lacked the requisite probable cause for a warrantless arrest. See Berry v. State, 493 So.2d 1098, 1100 (Fla. 4th DCA 1986).
For the reasons stated above, we reverse the trial court's denial of the appellant's motion to suppress and remand with directions to discharge appellant.
Reversed and Remanded.
KLEIN and STEVENSON, JJ., concur.
NOTES
[1] The trial court apparently rejected the state's argument at the suppression hearing that the police had probable cause to believe that appellant was loitering or prowling. Loitering and prowling must occur "in a manner not usual for law  abiding citizens and under circumstances that warrant a justifiable and reasonable concern for the safety of persons or property in the area." J.D.H. v. State, 967 So.2d 1128, 1131 (Fla. 2d DCA 2007). Moreover, "the defendant's actions must be so alarming as to create an imminent threat to public safety." Id. Here, the officer did not testify concerning facts and circumstances that indicated appellant was loitering or prowling.