69 So.3d 311 (2011)
K.M.B., a child, Appellant,
v.
STATE of Florida, Appellee.
No. 4D10-2645.
District Court of Appeal of Florida, Fourth District.
August 10, 2011.
Rehearing Denied October 4, 2011.
*312 Carey Haughwout, Public Defender, and Patrick B. Burke, Assistant Public Defender, West Palm Beach, for appellant.
Pamela Jo Bondi, Attorney General, Tallahassee, and Myra J. Fried, Assistant Attorney General, West Palm Beach, for appellee.
POLEN, J.
K.M.B., a child, appeals the final judgment of delinquency, finding him guilty of resisting arrest without violence and trespass after warning. The trial court withheld adjudication, gave K.M.B. a stern judicial warning, and required him to complete twenty-five hours of community service and an online anger management course. We reverse the withhold of adjudication as to the trespass but affirm as to the resisting arrest without violence.
K.M.B. was charged by way of juvenile petition with resisting arrest without violence and trespass after warning. At trial, Donald Massey, the director of security for Sawgrass Mills Mall, testified that the Mall hires off-duty police officers to enforce the Mall's trespass program.[1] Massey testified that at 10:15 p.m., in the Oasis (a patio section of the Mall), security does a sweep of all juveniles who are unaccompanied by a parent; a juvenile will be asked to leave the property if he or she is unaccompanied by a parent or if the juvenile breaks a rule of the code of conduct, such as causing a commotion/disturbance or swearing. If the juvenile refuses to leave, it is considered a trespass because the juvenile has been directed to leave the property.
Massey further testified that on the night of March 27, 2010, he and Officer Pullease approached Massey's staff, which had made contact with K.M.B., to ask K.M.B. if he had a movie ticket.[2] Massey saw a commotion and approached; at this point, Pullease made contact with K.M.B. and was in the process of gathering K.M.B.'s information in an attempt to have him "trespassed."[3] Pullease asked K.M.B. for his name twice; K.M.B. responded both times with, "F____ you." At this point, Pullease went to arrest K.M.B. because he wouldn't cooperate. As Pullease tried to arrest him, K.M.B. grabbed a hand rail; Pullease could not get his handcuffs on K.M.B. or get K.M.B.'s hands behind his back. Pullease then placed K.M.B. in a headlock and took him to the ground. Eventually one of the security officers was able to handcuff K.M.B. K.M.B. was then arrested and removed from the property. Massey stated that the only problem was that K.M.B. failed to leave the premises after he was asked for his ticket.
Officer Pullease testified that when he responded to the disturbance, he observed *313 K.M.B. having a verbal altercation with a security guard; K.M.B. was shouting obscenities. After Pullease approached, he tried to get K.M.B.'s information, but K.M.B. told Pullease: "f____ you, cracker." At this point, based on what Pullease saw, he told K.M.B. that he was under arrest. Pullease did not tell K.M.B. why he was under arrest; however, Pullease testified that it was his intention to arrest him for disorderly conduct.[4] Pullease testified that he never got to the point of mentioning anything to K.M.B. about trespassing, nor did he specifically tell K.M.B. to leave the property. Once K.M.B. said "f____ you, cracker," Pullease placed him under arrest.
After the State rested, K.M.B. moved for a judgment of dismissal, arguing that K.M.B. was not arrested for trespass, and that the officer gave no testimony as to a trespass after warning; instead, he was arrested for disorderly conduct, something with which he was not charged. The trial court denied the motion. K.M.B. rested and again moved for a judgment of dismissal. The trial court again denied the motion and found K.M.B. guilty on both counts.[5] The trial court withheld adjudication, gave K.M.B. a stern judicial warning and required him to complete twenty-five hours of community service and an online anger management course. This appeal followed.
On appeal, K.M.B. argues that because the officer did not warn him that he was trespassing, or ask him to leave, the trial court erred in denying K.M.B.'s motion for judgment of dismissal as to the trespassing charge. The standard of review of a motion for judgment of dismissal is the same standard we apply to review a judgment of acquittalde novo. R.H. v. State, 56 So.3d 156, 157 (Fla. 4th DCA 2011) (citing J.P. v. State, 855 So.2d 1262, 1264, n. 1 (Fla. 4th DCA 2003); Jones v. State, 869 So.2d 1240, 1242 (Fla. 4th DCA 2004)). "If the evidence, taken in a light most favorable to the state does not support a conviction, the motion must be granted. If the state establishes the existence of each element of the crime charged, then the motion must be denied." T.L.T. v. State, 53 So.3d 1100, 1102 (Fla. 4th DCA 2011).
Section 810.09, Florida Statutes (2009), provides:
(1)(a) A person who, without being authorized, licensed, or invited, willfully enters upon or remains in any property other than a structure or conveyance:

*314 1. As to which notice against entering or remaining is given, either by actual communication to the offender or by posting, fencing, or cultivation as described in s. 810.011 ... commits the offense of trespass on property other than a structure or conveyance.
"Thus, to convict for violating this statute, the State must prove four elements: (1) the defendant willfully entered or remained on property; (2) other than a structure or conveyance; (3) without being authorized, licensed, or invited; (4) when notice against entering or remaining had been given to the defendant." Seago v. State, 768 So.2d 498, 500 (Fla. 2d DCA 2000) (citing A.L. v. State, 675 So.2d 703, 704 (Fla. 3d DCA 1996)).
When an invitation has been extended to enter an open business, actual communication is necessary to put a person on notice that he is no longer welcome on the property and may be arrested for trespass. Smith v. State, 778 So.2d 329, 331 (Fla. 2d DCA 2000). In Smith, the Second District held that because Smith "had been invited on the `quasi-public' property[[6]] and had no notice that he was not permitted to remain [,][t]he arrest for trespassing was illegal...." Id. (emphasis added). See also Powell v. State, 958 So.2d 1012, 1014 (Fla. 4th DCA 2007) (finding Smith distinguishable because here, the defendant knew he was not permitted to be on the property by actual notice provided by the store owner and by a "No Trespass" sign).
The petition for delinquency in this case alleges the following as to the trespass after warning count:
COUNT II: K.M.B. ... did, without being authorized, licensed, or invited, willfully enter upon or remain in a property other than a structure or conveyance... as to which prior notice against entering or remaining was given by actual communication ... by the owner of the said premises or by an authorized person, to-wit: OFFICER C. PULLEASE, contrary to F.S. 810.09, FIRST DEGREE MISDEMEANOR, TRESPASS AFTER WARNING. [Emphasis added].
We hold the trial court erred in denying K.M.B.'s motion for judgment of dismissal as to the trespass charge. Although Massey testified that he witnessed Pullease ask K.M.B. to leave, this testimony was contradicted[7] by Pullease, himself, who admitted that he never actually communicated to K.M.B. that he was to leave. Thus, Pullease never warned K.M.B. pursuant to section 810.09. Pullease testified that it was only after witnessing K.M.B.'s behavior and hearing the "f____ you, cracker" remark, which to him evidenced a disruption of the peace, that he arrested K.M.B. Although Pullease did not tell K.M.B. why he was under arrest, he testified that it was his intention to arrest him for disorderly conduct. The charge in this case is trespass after warning. As Pullease testified at trial that no warning was *315 given, the State failed to establish a violation of section 810.09. As such, the court's finding was not supported by competent substantial evidence. Thus, it was error for the trial court to deny K.M.B.'s motion for judgment of dismissal as to the trespass after warning charge. However, we affirm the withhold of adjudication as to the resisting arrest without violence charge because K.M.B. did not argue for reversal of this charge in this appeal.
Reversed in part; Affirmed in part.
WARNER and LEVINE, JJ., concur.
NOTES
[1] The Mall is private property with an open invitation to the public.
[2] Massey testified that if a child purchases a movie ticket and enters the theater prior to 10:30 p.m., he has an invitation to be there until the movie ends. The incident in question occurred around 10:15 or 10:20 p.m. Massey also testified that the code of conduct applies to juvenile purchases of movie tickets; once a ticket is bought, the juvenile needs to enter the movie theatera juvenile cannot be in the common area of the Mall at that point.
[3] The term "trespassed" has been used by the Second and Fifth Districts. See Morfit v. Univ. of S. Fla., 794 So.2d 655 (Fla. 2d DCA 2001); Augustus v. State, 773 So.2d 104, 105 (Fla. 5th DCA 2000).
[4] We find that Officer Pullease did not have probable cause to arrest K.M.B. for disorderly conduct. See State v. Saunders, 339 So.2d 641, 644 (Fla. 1976) (limiting the application of section 877.03, Florida Statutes, and applying it only to either words which by their very utterance inflict injury or tend to incite an immediate breach of the peace, or to words, known to be false, reporting some physical hazard in circumstances where such a report creates a clear and present danger of bodily harm to others) (internal citations omitted); W.L. v. State, 769 So.2d 1132 (Fla. 3d DCA 2000) (holding that where the juvenile yelled profanities at the officers, which did not incite a breach of the peace, the words were "pure speech," protected by the First Amendment, which could not constitute disorderly conduct). Thus, mere cursing at an officer is insufficient to form probable cause for an arrest for disorderly conduct. However, as this point was not raised by K.M.B. on appeal, we affirm the withhold of adjudication as to the resisting arrest without violence charge.
[5] The trial court never made a specific finding regarding whether or not K.M.B. was asked or told to leave or as to who actually communicated the notice or warning to him. The court only stated that it "did not have any reasonable doubt that the State was able to prove its case"; "the mall acted reasonably under the circumstances"; and that "they're within their legal rights to ask you to leave or to act in a certain way while you're there."
[6] A privately-owned convenience store, operated for monetary gain but open to the public. Id. at 330.
[7] Massey also testified that "his staff" asked K.M.B. to leave after he was asked for his movie ticket; however, he never testified as to who specifically told him this or when he was told this. In light of the fact that Pullease admitted he did not tell K.M.B. to leave, after Massey testified that he heard Pullease tell K.M.B. to leave, Massey's testimony regarding what "his staff" said is neither competent nor substantial evidence sufficient to establish an element of the State's case. Further, the petition for delinquency clearly states that it was Pullease (not "staff") who gave actual communication against remaining on the premises to K.M.B. Because Pullease admitted at trial that this was not true, it is clear that notice was not given.